IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **COLUMBIA GAS TRANSMISSION, LLC,** : | CIVIL ACTION NO. 1:15-CV-0360 |
| : | |
| : | (Chief Judge Conner) |
| **Plaintiff** : | |
| : | |
| v. : | |
| : | |
| **10.5068 ACRES, MORE OR LESS IN YORK COUNTY, LOCATED ON PARCEL IDENTIFICATION NO. 4400016003100, OWNED BY MARBURG MEMORIAL GARDENS, INC.** *et al.*, : | |
| : | |
| : | |
| : | |
| : | |
| : | |
| : | |
| **Defendants** : | |

## MEMORANDUM

Presently before the court is the motion (Doc. 4) for preliminary injunctive relief filed by plaintiff Columbia Gas Transmission, LLC ("Columbia"). For the reasons that follow, the court will grant Columbia's motion.

**I.   Background**

Columbia commenced this action on February 18, 2015 by filing a complaint in condemnation pursuant to the Natural Gas Act, 15 U.S.C. § 717f, and Federal Rule of Civil Procedure 71.1. (Doc. 1). Columbia seeks to exercise its purported right of eminent domain under the Natural Gas Act to obtain certain permanent and temporary easements on property owned by defendant Marburg Memorial Gardens, Inc. ("Marburg")[1] for the purpose of replacing a natural gas pipeline.

---

[1] The property at issue is located in York County, Pennsylvania on parcel identification number 4400016003100. (Doc. 42 ¶ 5).

Columbia requests, *inter alia*, immediate possession of the easements at issue, an order of judgment of taking by eminent domain, and a trial to determine just compensation for the taking. (Doc. 42 at 5-6). Columbia subsequently moved for preliminary injunctive relief in the form of immediate possession of the proposed easements (Doc. 4) and partial summary judgment regarding its right to condemn the easements (Doc. 7). Marburg filed opposition briefs to both motions. (Docs. 18, 21). Columbia also moved for an expedited hearing on its request for injunctive relief. (Doc. 11). The court held a preliminary injunction hearing on March 13, 2015 and March 23, 2015, during which it received testimony from Marburg's chief operating officer Thomas Garver ("Garver") and from two employees of Contract Land Staff ("CLS"), which manages certain aspects of the pipeline replacement project on behalf of Columbia. Following the hearing, Columbia filed an amended complaint in condemnation (Doc. 42) that reflected a modification to the proposed easements, as addressed at the hearing. Pursuant to the court's instructions, both parties submitted proposed findings of fact and conclusions of law. (Docs. 39, 40). With briefing concluded and the record closed, Columbia's motion for preliminary injunction is ripe for disposition.

## II. Findings of Fact[2]

Columbia is engaged in the interstate transportation of natural gas, and therefore is a "natural gas company" under the Natural Gas Act. (Doc. 6-1 ¶ 6).

---

[2] Consistent with the directive of Federal Rule of Civil Procedure 65(d), the following factual narrative represents the court's findings of fact as derived from the record evidence.

Accordingly, Columbia is subject to regulation by the Federal Energy Regulatory Commission ("FERC"). (Id.) On January 7, 1983, FERC issued Columbia a "blanket certificate of public convenience and necessity," which authorizes Columbia to conduct certain activities without further approval from FERC. Columbia Gas Transmission Corporation, 22 FERC ¶ 62,029 (1983).

This action concerns a fifty-year-old pipeline ("Line 1655") that provides natural gas to residents of York County. (Id. ¶ 10). The age and condition of the pipeline present certain safety risks, including line failure. (Id.) Columbia has contracted with CLS to acquire property affected by the replacement project. Michael McClain ("McClain"), a land manager for CLS, testified that portions of the pipeline were severely corroded and required emergency "integrity digs." (Mar. 13, 2015 Tr. at 27:16-28:1). Columbia must complete the replacement project by October 31, 2015 to satisfy an in-serve deadline, which necessitates tie-ins with local distribution companies prior to that date. (Id. at 43:19-44:17). If Columbia fails to meet these deadlines, its customers would not receive proper heating during the winter months. (Id. at 43:22-44:9). Various factors compel Columbia to undertake the replacement of Line 1655 in a linear manner. Nonlinear construction is inefficient and costly; it also creates safety concerns for construction crews. (Doc. 6-1 ¶¶ 17, 20; Mar. 13, 2015 Tr. at 43:7-18). The replacement project is set to commence at a station adjacent to the Marburg property. (Mar. 13, 2015 Tr. at 42:8-10).

On November 4, 2014, Columbia filed with FERC an application requesting authorization to replace 5.4 miles of Line 1655 in York and Adams Counties

pursuant to its blanket certificate. See Notice of Request Under Blanket Authorization, 79 Fed. Reg. 69,460-01 (Nov. 21, 2014). By letter dated November 5, 2014, Columbia notified Marburg of its FERC application, informed Marburg that it could submit a protest to FERC, and disclosed other information about the project. (Mar. 13, 2015 Tr. at 39:3-12; Ex. P-3).[3] FERC published the notice of request on November 21, 2014 and instructed the public that it could file protests to Columbia's request within sixty days or else Columbia's proposed activities would be deemed authorized. 79 Fed. Reg. at 69,460-01. No protests were filed within the sixty-day period. See Columbia Gas Transmission, LLC, FERC Docket No. CP15-11-000. Columbia has estimated that the replacement project will cost approximately $23 million. (Mar. 13, 2015 Tr. at 12:6-12).

Marburg is a nondenominational cemetery located near the southern end of the replacement project. (Doc. 18-1 ¶ 1; Mar. 13, 2015 Tr. at 30:5-11, 43:3-6). The existing pipeline, along which Columbia maintains a permanent easement, crosses the Marburg property. (See Mar. 13, 2015 Tr. at 29:17-19). Working in consultation with Garver, Columbia determined that it was not practical to build the new pipeline along the existing easement due to the presence of burials within the right-of-way. (Id. at 32:16-33:21). Columbia instead proposed to install the new pipeline largely beneath a separate road on the property that is not similarly encumbered by existing burials. (Id. at 33:3-9; Mar. 23, 2015 Tr. at 24:3-9). To avoid interference with burials along this new route, Columbia reduced the width of the proposed

---

[3] Citations to the record of the form "Ex. P-" refer to exhibits that Columbia introduced at the preliminary injunction hearing.

easement from fifty feet to twenty-five feet. (Mar. 23, 2015 Tr. at 26:22-28:4, 68:13-24). Anthony Mussare ("Mussare"), CLS's acquisition agent for the replacement project, testified that Columbia further removed a small rectangular area to create a buffer between the reduced easement and a single grave site that abutted one edge of the easement. (Id. at 33:2-34:19). This additional carve-out is reflected on a revised plat that Columbia filed in connection with its amended complaint. (See id. at 50:21-52:19; Doc. 42-2, Ex. 2 at 10). As modified, the proposed right-of-way does not traverse any existing burials, and therefore condemnation would not require the disinterment of any bodies. (See Mar. 23, 2015 Tr. at 48:22-49:10, 49:22-50:11). The right-of-way likely overlaps with a number of purchased but vacant burial plots. (See Mar. 13, 2015 Tr. at 56:17-57:2). The final proposed taking consists of a permanent easement of 0.11 acres and a temporary construction license of 0.07 acres. (Doc. 42-2, Ex. 2 at 10). The taking also encompasses a portion of Columbia's existing easement on the property. (Id.)

Columbia first contacted Garver about the replacement project in November 2013. (Doc. 18-1 ¶ 3). Over the course of the next year, Columbia's agents and Garver communicated about a number of issues related to the project,[4] including

---

[4] Among other issues, the parties discussed the removal of trees from the proposed right-of-way. Columbia initially maintained that it was necessary to clear any trees within the right-of-way prior to April 1, 2015 pursuant to United States Fish and Wildlife Service guidance that seasonally restricts tree removal within the Indiana bat habitat. (Doc. 6 at 4-5; Doc. 6-1 ¶¶ 21-24). At the hearing, Garver testified that he would remove from the property two arborvitaes that are potentially affected by this restriction. (Mar. 13, 2015 Tr. at 72:4-10). Counsel for Columbia conceded that the tree removal issue is now moot. (Mar. 23, 2015 Tr. at 5:4-9). The court concludes that this issue no longer bears on Columbia's motion for preliminary injunctive relief.

the location of the new right-of-way and appropriate compensation for Columbia's taking. The parties were unable to reach an accord.

### III. Legal Standard

Preliminary injunctive relief is an extraordinary remedy and should issue in only limited circumstances. See Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1426-27 (3d Cir. 1994). Four factors inform a district court's decision whether to issue a preliminary injunction: "(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting preliminary relief will be in the public interest." Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff, 669 F.3d 359, 366 (3d Cir. 2012) (quoting Crissman v. Dover Downs Entm't Inc., 239 F.3d 357, 364 (3d Cir. 2001)). The moving party bears the burden of establishing that the greater balance of these factors weighs in its favor. Constructors Ass'n of W. Pa. v. Kreps, 573 F.2d 811, 815 (3d Cir. 1978). A movant's failure to demonstrate a likelihood of success on the merits or irreparable harm in the absence of preliminary injunctive relief renders a preliminary injunction inappropriate. Grill v. Aversa, 908 F. Supp. 2d 573, 591 (M.D. Pa. 2012).

### IV. Discussion

Preliminary injunctive relief in the form of immediate possession is available under the Natural Gas Act. Columbia Gas Transmission, LLC v. 1.01 Acres, More or Less in Penn Twp., York Cnty., Pa., 768 F.3d 300, 315 (3d Cir. 2014). To obtain

injunctive relief, a natural gas company must first establish that it has a substantive right to condemn the property at issue. E. Tenn. Natural Gas Co. v. Sage, 361 F.3d 808, 828 (4th Cir. 2004); Steckman Ridge GP, LLC v. An Exclusive Natural Gas Storage Easement Beneath 11.078 Acres, More or Less, in Monroe Twp., No. 08-168, 2008 WL 4346405, at *13 (W.D. Pa. Sept. 19, 2008). The Natural Gas Act provides in relevant part as follows:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts.

15 U.S.C. § 717f(h). Any injunctive relief awarded must be constrained by the scope of this statute and the relevant FERC certificate. Columbia Gas Transmission, LLC v. 1.092 Acres of Land in Twp. of Woolwich, Gloucester Cnty., N.J., No. 15-208 JBS/KMW, 2015 WL 389402, at *3 (D.N.J. Jan. 28, 2015). Hence, the threshold issue is whether Columbia's blanket certificate permits the proposed taking under the auspices of the Natural Gas Act.

    A.    **Columbia's Right to Condemnation**

To condemn easements in connection with the construction of a pipeline, a natural gas company must demonstrate that (1) it holds a FERC certificate of public convenience and necessity, (2) the rights-of-way to be condemned are necessary for the construction, operation, and maintenance of the pipeline, and (3) it has been

unable to acquire the proposed rights-of-way from the landowner.  1.092 Acres, 2015 WL 389402, at *3.

Columbia has established each of these prerequisites in the case *sub judice*. First, Columbia possesses a blanket certificate of public convenience and necessity from FERC.  This certificate automatically authorizes Columbia to conduct certain "routine activities . . . on a self-implementing basis." 22 FERC ¶ 62,029 at 63,053 (citing 18 C.F.R. § 157.203(b)).  The certificate also authorizes certain "other categories of activities" subject to compliance with applicable prior notice requirements.  Id. (citing 18 C.F.R. § 157.203(c)).  Both categories of activities encompass the replacement of any "eligible facility."  18 C.F.R. § 157.208(a)-(b).  The Third Circuit has held that "eligible facilities" include mainline replacements that, like the segment of the pipeline at issue in the instant matter, cannot be located on the same right of way as the original line.  Columbia Gas Transmission, LLC, 768 F.3d at 305, 309.[5]

Columbia characterizes the Line 1655 replacement project as a "routine activit[y]" within the meaning of its blanket certificate, and hence automatically authorized by FERC.  (See Doc. 6 at 6-7).  At the preliminary injunction hearing, however, counsel for Columbia acknowledged that, given the cost of the relevant project, authorization was subject to additional notice requirements.  (Mar. 13, 2015

---

[5] The court notes that Marburg has conceded that Columbia possesses the "legal authority to condemn property for purposes of repair or replacement of their line." (Doc. 18 at 4).

Tr. at 22:15-19).[6]  Columbia has demonstrated compliance with these requirements. On November 4, 2014 Columbia filed with FERC a prior notice request pursuant to section 157.205 of the regulations governing blanket certificates, as required by sections 157.203(c) and 157.208(b).  See 79 Fed. Reg. at 69,460-01.  After no protests were filed within sixty days of FERC's issuance of the notice, Columbia's blanket certificate provided authority for the project.  See 18 C.F.R. § 157.205(h)(1). Moreover, Columbia complied with applicable landowner notification procedures with respect to Marburg.  See 18 C.F.R. § 157.203(d)(2).  On November 5, 2014, Columbia sent a certified letter to Garver disclosing, *inter alia*, the purpose of the replacement project, the nature of FERC's blanket certificate program, the relevant

---

[6] In Columbia Gas Transmission, LLC, the Third Circuit considered whether Columbia's blanket certificate automatically authorized a different aspect of the replacement project, noting that the anticipated cost of that project was initially less than a threshold amount.  768 F.3d 300 at 304 n.4.  The court held that sections 157.203(b) and 157.208(a) of the regulations governing blanket certificates under the Natural Gas Act "specifically and automatically authorize the main line replacement at issue here as a routine activity in connection with an eligible facility."  Id. at 305.  In the instant matter, by contrast, authorization for the project implicates sections 157.203(c) and 157.208(b) of the regulations, which mandate additional notice procedures.  See 18 C.F.R. §§ 157.203(c), 157.208(b).

FERC docket number, and Marburg's right to protest the project within sixty days of FERC's issuance of the notice of request. (Ex. P-3).[7]

Second, the court finds that Columbia's proposed easements, as depicted in the plat contained in Exhibit 2 to the amended complaint (Doc. 42-2, Ex. 2 at 10), are necessary for the replacement of Line 1655. McClain explained that numerous graves encroach on Columbia's existing right-of-way through the Marburg property. (Mar. 13, 2015 Tr. at 32:16-33:21). Columbia selected the new right-of-way, which largely travels along a road, to minimize any impact on the cemetery. (Id. at 33:3-9; Mar. 23, 2015 Tr. at 24:3-9). Indeed, Mussare testified that Columbia

---

[7] Marburg argues that Columbia is not entitled to condemn the proposed easements because it failed to provide notice to those who purchased vacant burial plots within the new right-of-way. (Doc. 18 at 4). The court disagrees. The regulations governing blanket certificates under the Natural Gas Act provide that a natural gas company shall make a good faith effort to notify all "affected landowners." 18 C.F.R. § 157.203(d). The regulations define "affected landowners" in relevant part as "owners of property interests, as noted in the most recent county/city tax records as receiving the tax notice," whose property is directly impacted by the proposed activities or whose property abuts the proposed right-of-way. See 18 C.F.R. § 157.6(d)(2). Garver testified that contractual acquisition of individual burial plots is not part of the public record. (Mar. 13, 2015 Tr. at 70:24-71:7). Additionally, the court notes that under Federal Rule of Civil Procedure 71.1, a plaintiff in a condemnation action initially need only join as defendants "those persons who have or claim an interest in the property and whose names are then known." FED. R. CIV. P. 71.1(c)(3). Marburg does not contend that Columbia knew the identities of the burial plot purchasers when it commenced this action. Rule 71.1 supersedes any directive in 15 U.S.C. § 717f(h) that requires compliance with contrary state "practice and procedure" regarding condemnation. See 1.092 Acres, 2015 WL 389402, at *3 n.8.

decreased the width of the proposed right-of-way to avoid existing burials. (Mar. 23, 2015 Tr. at 26:22-28:4).[8]

Finally, Columbia has not been able to acquire the proposed easements from Marburg. Garver acknowledged that he received an offer from Columbia but that he did not accept it. (Mar. 13, 2015 Tr. at 60:14-17; Mar. 23, 2015 Tr. at 70:7-11). The court therefore concludes that Columbia has a substantive right to condemn the proposed easements. Hence, the court will address whether injunctive relief is appropriate under the circumstances of this case.

**B.    Preliminary Injunctive Relief**

*1.    Likelihood of Success on the Merits*

As the court concluded *supra*, Columbia has demonstrated that it is entitled to condemn the easements at issue in this action. Accordingly, Columbia has established a likelihood of success on the merits. Columbia Gas Transmission, LLC, 768 F.3d at 314-15; 1.092 Acres, 2015 WL 389402, at *3.

*2.    Irreparable Harm to Columbia*

Columbia contends that it will suffer irreparable harm if the court denies its request for injunctive relief in light of the condition of Line 1655 and the manner in which the pipeline must be replaced. (Doc. 6 at 9-10). The record supports Columbia's position. Jacob Frederick ("Frederick"), Columbia's project manager,

---

[8] Insofar as the proposed right-of-way agreement included in Exhibit 2 to the amended complaint contemplates a larger area of permanent or temporary condemnation than that depicted in the plat (see Doc. 42-2, Ex. 2), the court does not find the condemnation of that additional area necessary for the replacement of the pipeline in light of the evidence presented at the hearing.

explained that the pipeline is approximately fifty years old and presents certain safety and reliability concerns that increase with time. (Doc. 6-1 ¶ 10). Furthermore, Columbia must replace the pipeline by an in-service deadline of October 31, 2015 and complete tie-ins with distribution companies before that date. (Mar. 13, 2015 Tr. at 43:19-44:17). Adherence to these deadlines is necessary to ensure that Columbia's customers receive proper gas service. (Id. at 43:22-44:9); see also Columbia Gas Transmission, LLC, 768 F.3d at 315 (finding irreparable harm when, *inter alia*, a delay in the replacement project could cause Columbia to miss an in-service deadline).

The replacement project is further complicated by the construction method required. In the interests of cost and efficiency, Columbia must replace the pipeline in a linear fashion. (Doc. 6-1 ¶¶ 17, 20); see also Steckman Ridge GP, 2008 WL 4346405, at *16 ("If the preliminary injunction is not granted, [plaintiff] will have to 'build up' to a certain parcel, and then move around it to continue construction, which will cause waste and inefficiency."). McClain testified that nonlinear construction results in the disjointed, overlapping mobilization of construction crews, which significantly delays the construction schedule and poses safety issues for the crews. (Mar. 13, 2015 Tr. at 43:7-18). McClain further explained that the replacement project is scheduled to begin adjacent to the Marburg property. (Id. at 42:8-10). Columbia's inability to obtain immediate access to the property could significantly disrupt the remainder of the project.

Under the totality of the evidence, the court finds that Columbia will likely suffer irreparable harm unless it receives immediate possession of the proposed

easements. As in Columbia Gas Transmission, LLC, the potential harm to Columbia implicates its safety, reputation, and economic interests. 768 F.3d at 315.[9] Accordingly, this factor supports immediate possession of the easements.

        3.      *Greater Harm to Marburg*

Columbia argues that the balance of the equities favors immediate possession because Marburg is guaranteed just compensation for the condemnation and because Columbia is willing to post a bond as a precondition for injunctive relief. (Doc. 6 at 11). The court agrees. Marburg has not established that it will incur any additional harm if the court grants Columbia's request for immediate possession than if it defers the issue of possession until a later point in the proceedings. See Columbia Gas Transmission, LLC v. 76 Acres More or Less, No. ELH-14-0110, 2014 WL 2960836, at *16 (D. Md. June 27, 2014).[10] The court recognizes that granting Columbia possession of an additional right-of-way on the property may result in disruption to Marburg's business and a loss of revenue. The court observes, however, that Marburg's right to just compensation for any taking and the bond that Columbia must deposit to obtain immediate possession will adequately protect Marburg's interests. See 1.092 Acres, 2015 WL 389402, at *5.

---

[9] Marburg takes issue with McClain's inability to conclude definitively whether Columbia will meet the applicable in-service deadline if it does not obtain immediate possession of the easements. (Doc. 39 at 5-6). This argument accurately characterizes McClain's testimony but ignores the other ways in which Columbia's interests will likely be harmed in the absence of injunctive relief.

[10] Marburg speculates that "it is hard to conceive of this project moving forward without man and machinery traversing the grave site and the metal marker." (Doc. 39 at 6). Notwithstanding the lack of evidentiary support for this claim, the court emphasizes that the proposed right-of-way has been expressly restricted to avoid interference with this grave site. (See Doc. 42-2, Ex. 2 at 10).

*4.     Public Interest*

Columbia contends that the replacement project is designed to rectify safety concerns and improve gas service to its customers. (Doc. 6 at 11). In his declaration, Frederick stated that the existing pipeline requires replacement and poses safety risks to the public that increase each day. (Doc. 6-1 ¶ 10). Any failure of the pipeline, according to Frederick, could disrupt service to Columbia's customers in York County. (Id.) Marburg counters that Frederick has not provided a statistical analysis of pipeline failure and that the court cannot infer any immediate risk to the public from the age of the pipeline alone. (Doc. 18 at 3, 5; Doc. 39 at 5).

In Columbia Gas Transmission, LLC, the Third Circuit held that similar averments by Frederick "overwhelmingly" counseled in favor of immediate possession of another portion of the same pipeline. 768 F.3d at 316. The court agrees with Marburg that Columbia has not detailed the likelihood of pipeline incident with specificity. Nevertheless, McClain noted that certain portions of the pipeline, including segments within a few miles from the Marburg property, were severely corroded and required curative "integrity digs." (Mar. 13, 2015 Tr. at 27:16-28:9). McClain also testified that without immediate possession, Columbia could not guarantee that it would meet an October 31, 2015 in-service deadline. (Id. at 43:19-44:9); see also Columbia Gas Transmission, LLC, 768 F.3d at 316 (finding immediate possession in the public interest when Columbia established that a delay in the replacement project could possibly result in customers losing heat). The

court concludes that immediate possession of the proposed easements serves the public interest.

**V.     Conclusion**

For all of the foregoing reasons, the court will grant Columbia's motion (Doc. 4) for preliminary injunction.  An appropriate order will issue.

      /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:       March 31, 2015